**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FLEET CONNECT SOLUTIONS LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26 C 9097** |
| | ) | |
| **XIRGO TECHNOLOGIES, LLC and XIRGO HOLDINGS, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Fleet Connect Solutions, LLC sued Xirgo Technologies, LLC and Xirgo Holdings, Inc. (collectively Xirgo) for infringing seven of Fleet Connect's patents relating to technology-driven communication and fleet management solutions for transportation and logistics businesses. Xirgo has moved to dismiss pursuant to Rule 12(b)(6). For the reasons discussed below, the Court denies Xirgo's motion.

## Background

Fleet Connect is a Texas-based company. Both Xirgo Technologies, LLC and Xirgo Holdings, Inc. are headquartered in Rolling Meadows, Illinois. Fleet Connect owns seven patents that it alleges Xirgo infringed in its amended complaint, which was originally filed in the Eastern District of Virginia. The patents are described in the following chart

| | U.S. Patent No. | Title |
|---|---|---|
| 1 | 7,741,968 (the '968 patent) | System And Method for Navigation Tracking of Individuals in a Group[1] |
| 2 | 9,299,044 (the '044 patent) | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |
| 3 | 9,747,565 (the '565 patent) | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |
| 4 | 10,671,949 (the '949 patent) | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |
| 5 | 7,206,837 (the '837 patent) | Intelligent Trip Status Notification |
| 6 | 6,941,223 (the '223 patent) | Method And System For Dynamic Destination Routing |
| 7 | 6,549,583 (the '583 patent) | Optimum Phase Error Metric for OFDM Pilot Tone Tracking in Wireless LAN |

In response, Xirgo filed a motion to dismiss contending that Fleet Connect's patents (except for the '583 patent) claim unpatentable subject matter under the Patent Act, 35 U.S.C. § 101, because they are based on abstract ideas and lack an inventive concept. Xirgo also alleges that Fleet Connect failed to plausibly plead infringement of any of the cited patents. Specifically, Xirgo contends that Fleet Connect's patents are members of four different families, each of which Xirgo contends can be analyzed for eligibility and/or infringement by a single representative claim, as reflected in the following chart:

[1] After Fleet Connect filed its amended complaint, the Patent Trial and Appeal Board affirmed the rejection of the '968 Patent claims 1-8. Fleet Connect notified the Court that it does not intend to appeal this rejection. Accordingly, Fleet Connect's claim of infringement of the '968 patent is moot, and the Court will not discuss it further.

| U.S. Patent No. | Referenced As The . . .[2] | Representative Claim |
|---|---|---|
| 9,299,044<br>9,747,565<br>10,671,949 | Barbosa patents | Cl. 1 of the '044 patent |
| 7,206,837 | '837 patent | Cl. 1 of the '837 patent |
| 6,941,223 | '223 patent | Cl. 19 of the '223 patent |
| 6,549,583 | '583 patent | Cl. 1 of the '583 patent |

In general, the Barbosa patents are "directed to a method, device and apparatus for managing mobile assets in the field such as personnel, equipment and inventory via communications with handheld data management devices located in the field." Am. Compl. ¶ 83. The '837 patent is "directed to solving the problem of inaccurate time-of-arrival estimation for mobile communications devices in transit" by "providing a method for estimating time-of-arrival bounds for a confidence interval based on historical travel time statistics." Pl.'s Resp. Br. at 13-14 (emphasis omitted). The '223 patent is "directed to a system for the dynamic destination routing of vehicles" that utilizes real-time data synchronization to continuously check if a vehicle's initial route remains optimal. Am. Compl. ¶ 40, 61. The '583 patent concerns a method for estimating and correcting radio wave phase errors in orthogonal frequency-division multiplexing (OFDM) wireless local area networks (WLANs) by using pilot tones to compensate for phase variations and improve the reliability of received data. '583 patent at [57].

Xirgo contends in its motion that the Barbosa patents, the '837 patent, and the '223 patent all pertain to abstract ideas ineligible for patent protection because they are

[2] The Parties at times refer to the patent families with different nomenclature. The Court refers to the patent families and respective U.S. Patent numbers as described in Xirgo's motion to dismiss.

directed to the abstract concept of receiving and sending data and do not contain an inventive concept. In addition, Xirgo contends that Fleet Connect failed to plausibly plead infringement. Fleet Connect responds that a ruling on patentability is premature, and that even if the issue is ripe, its patents are patent eligible. Further, Fleet Connect alleges that its amended complaint plausibly pleads infringement for each patent.

After Xirgo filed its motion to dismiss, the case was transferred to this district under 28 U.S.C. § 1404(a).

## Legal Standard

On a motion to dismiss for failure to state a claim, the Court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and assesses whether the plaintiff has asserted a plausible basis for relief. *See, e.g.*, *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal Rule of Civil Procedure 8(a) requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Under this standard, a plaintiff who seeks to survive a motion to dismiss must plead some facts that suggest a right to relief that is beyond the speculative level." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotations omitted).

## Discussion

Xirgo argues for dismissal on two separate grounds: (1) Fleet Connect's patents are patent ineligible; and (2) Fleet Connect fails to plausibly plead infringement.

### A. Patent eligibility under § 101

Xirgo contends that the Barbosa patents, the '837 patent, and the '223 patent are

patent ineligible. "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101. The Supreme Court has recognized that section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70-72 (2012).

The Supreme Court has established a two-part framework, known as the *Alice* inquiry, for determining patent eligibility. A claim is not patent eligible under section 101 if it is: (1) "directed to a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea" and (2) "the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP Am., Inc. v. InvestPic, Inc.*, 898 F.3d 1161, 1166-67 (Fed. Cir. 2018) (internal quotations omitted) (citing *Alice*, 573 U.S. at 217). Step one of the *Alice* inquiry "looks at the focus of the claims" and "their character as a whole." *SAP Am.*, 898 F.3d at 1167 (internal quotations omitted). Step two is a "search for an inventive concept." *Alice*, 573 U.S. at 217 (internal quotations omitted). Specifically, a court examines "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotations omitted).

Patentees who adequately allege their claims contain inventive concepts survive a section 101 eligibility challenge under Rule 12(b)(6). *Aatrix Software, Inc. v. Green*

*Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018). A process that solves a technological problem or improves an existing technological process is likely to be patent eligible. *Alice*, 573 U.S. at 223. Eligibility at the pleading stage can be resolved "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law," after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant. *Aatrix*, 882 F.3d 1125. A district court may deny a motion to dismiss based on the existence of a factual dispute at step two without definitively ruling as to step one. *Ollnova Techs. Ltd. v. ecobee Techs. ULC,* 177 F.4th 1343, 1357 n. 7 (Fed. Cir. 2026); *see, e.g.*, *Aatrix*, 882 F.3d at 1126-28 (reviewing motion to dismiss and considering only *Alice* step two); *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131 (Fed. Cir. 2022) ("We need not address the parties' dispute regarding the application of *Alice* step one because, as explained below, the claims contain alleged inventive concepts not limited to the abstract idea, which defeat Kollective's Rule 12 motion."). Finally, although "claim construction is not an inviolable prerequisite to a validity determination under § 101 . . . it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).

The Court focuses its analysis in this case on the eligibility of Fleet Connect's allegedly infringed patents under *Alice* step two. Even if, as Xirgo contends, the Barbosa patents, the '837 patent, and the '223 patent are all "directed to the abstract concept of receiving," "analyzing" and "sending data," Defs.' Mem. of Law in Supp. of

Mot. to Dismiss at 6, 14, 19, Fleet Connect may state a claim that survives *Alice* step two on a motion to dismiss if it presents sufficient factual allegations that, when taken as true, support patent eligibility. *Aatrix*, 882 F.3d at 1126. In this regard, claims are patentable "when the claims solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016).

The Court finds that Fleet Connect presents a factual dispute at *Alice* step two for each of the allegedly infringed patents subject to Xirgo's § 101 arguments.

**1. Barbosa patents ('044, '565, '949 patents)**

Fleet Connect makes numerous factual allegations that each of the three Barbosa patents solve technical problems through an inventive concept that was not previously known in the art. First, regarding the '044 patent:

> The claims of the '044 patent are directed to subject matter and specific inventions that were *not previously disclosed in the art* . . . . The '044 patent teaches specific techniques to manage mobile field assets in a way that could avoid the need to deploy more experienced personnel while ensuring . . . the quality of the field work . . . . [The patent] provides quality assessments/estimates/appraisals for conducting work in the field through worker specific templates on handheld devices that are synchronized to a remote server is *inventive and was not previously known in the art*.

Am. Compl. ¶ 106 (emphasis added).

Further, Fleet Connect alleges that "[e]ven if the '044 patent claims were directed at an abstract idea, which *a POSITA would not reasonably believe, the claims capture subject matter that was previously unknown and inventive*." *Id.* ¶ 105 (emphasis added). It alleges that "[a] POSITA would understand that these claims did not merely employ generic components in a conventional or routine way . . . and . . . they are *directed to solve the problems in search technologies* that existed in September of

2000." *Id.* ¶ 107 (emphasis added).

Second, Fleet Connect alleges that the claims of the '565 patent provide "methods for managing field assets through handheld devices by identifying unfinished tasks, reporting the status of tasks, synchronizing that data with the server at the end of the completion of the field event or project" and "allocating unfinished tasks to another worker/shift." *Id.* ¶ 126. "A POSITA would understand that the subject matter to which these claims are directed, in the form they are claimed, and addressing then existing problems in mobile field asset management, *was not previously known in the art*." *Id.* (emphasis added). In addition, Fleet Connect alleges that

> [e]ven if the '565 patent claims were directed at an abstract idea (which they are not), the claims capture subject matter that is inventive . . . . A POSITA would understand that the claims of the '565 patent are directed *to matter that was not known in the art at the time*, and to the extent that the claims employ components and technology that existed at the time (like a "template," "memory device" and "processing device," "server" or a "handheld device," for instance), *they are employed together here in a way that was new (and certainly would not have been considered conventional, routine, or generic to those skilled in the art)*.

*Id.* ¶ 129 (emphasis added).

Third, regarding the '949 patent, Fleet connect alleges:

> A POSITA would understand that these claims provided a specific improvement in mobile field assets through worker specific templates that prioritize and track task groups on devices and methods for managing field assets through worker specific templates that prioritize and track task groups on devices that are synchronized to a remote server, and that *this type of solution did not exist prior to the priority date of the '949 patent*.

*Id.* ¶ 149 (emphasis added). Moreover:

> Even if the '949 patent claims were directed at an abstract idea, which a POSITA would not reasonably believe, *the claims capture subject matter that was previously unknown and inventive*. . . . A POSITA would understand that the claims of the '949 patent are directed to *matter that was not known in the art at the time*, and to the extent that the claims

> employ components and technology that existed at the time (like "templates," "handheld devices," "task" and a "server," for instance), *they are employed together here in a way that was new and in a way that would not have been considered conventional, routine, or generic to a POSITA.*

*Id.* ¶ 152 (emphasis added).

In addition to the allegations stated in the amended complaint, Fleet Connect's complaint is supported by Dr. Goldberg's declaration, which is expressly incorporated by reference in the complaint. *Id.* ¶ 25. On a Rule 12(b)(6) motion to dismiss, the Court will "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference" and patents. *Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A motion to dismiss may be denied where the patentee provided expert testimony that would affect the § 101 analysis. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). Dr. Goldberg holds a PhD in electrical engineering. Am. Compl. Ex. 1, "Goldberg Declaration" at ¶ 7. In his declaration, Dr. Goldberg discusses his expert opinions regarding the eligibility of Fleet Connect's patents, whether the patents are technical solutions, what technical problems existed at relevant priority dates, and whether they include inventive concepts. *See generally* Goldberg Decl. In particular, Dr. Goldberg explains that each of the three Barbosa patents claims an inventive concept that was not previously known in the art:

First, Dr. Goldberg explains that the '044 patent "provided a specific improvement in mobile field asset management by disclosing devices and methods for coordinating field operations through worker specific templates on handheld devices that are

synchronized to a remote server. *This solution did not exist prior to the priority date of the '044 patent*." Goldberg Decl. ¶ 91 (emphasis added). He further states that "[e]ven if the '044 patent claims were directed at an abstract idea, which neither I nor a POSITA would reasonably believe, *the claims capture subject matter that was previously unknown and inventive*." *Id.* ¶ 94 (emphasis added). To the extent that the claims employ components and technology that existed at the time, Dr. Goldberg opines that "they are *employed together here in a way that was new and in a way that would not have been considered conventional, routine, or generic to a POSITA*." *Id.* (emphasis added).

Second, Dr. Goldberg states in his declaration that the '565 patent claims "are directed to solutions that were identified as problems in the art of mobile field asset management," specifically, "devices and methods for managing field assets through handheld devices by identifying unfinished tasks, reporting the status of tasks, synchronizing that data with the server at the end of the completion of the field event," and "allocating unfinished tasks to another worker/shift." *Id.* ¶¶ 100, 106. In Dr. Goldberg's opinion, "a POSITA would understand that the subject matter to which these claims are directed, in the form they are claimed, and addressing then existing problems in mobile field asset management, *was not previously known in the art*." *Id.* ¶ 106 (emphasis added). Further, he states, "[e]ven if the '565 patent claims were directed at an abstract idea (which they are not), *the claims capture subject matter that is inventive*." *Id.* ¶ 109 (emphasis added).

Third, in Dr. Goldberg's opinion, the claims of the '949 patent are "directed to more than 'receiving and sending data' or any other abstract idea," but are instead a

"specific improvement in mobile field asset management by disclosing devices and methods for managing field assets through worker specific templates that prioritize and track task groups on devices that are synchronized to a remote server," which was a solution that "*did not exist prior to the priority date of the '949 patent*." *Id.* ¶¶ 113, 120 (emphasis added). In addition, Dr. Goldberg states that "[e]ven if the '949 patent claims were directed at an abstract idea, which neither I nor a POSITA would reasonably believe, *the claims capture subject matter that was previously unknown and inventive*." *Id.* ¶ 123 (emphasis added). He goes on to state that "to the extent that the claims employ components and technology that existed at the time . . . *they are employed together here in a way that was new and in a way that would not have been considered conventional, routine, or generic to a POSITA.*" *Id.* (emphasis added).

Overall, the Barbosa patents, according to Dr. Goldberg, "accomplish something tangible in the computer world," because "the problems that the solutions of the [Barbosa patents] solve are specifically due to the human factor." *Id.* ¶¶ 92, 107, 121.

The factual allegations contained within Fleet Connect's amended complaint and Dr. Goldberg's declaration, taken as true and drawing all reasonable inferences in favor of Fleet Connect, state a plausible claim that each of the inventions "solve[s] a technology-based problem" and is therefore patent eligible. *Amdocs*, 841 F.3d at 1300. Fleet Connect's factual allegations go beyond merely claiming novelty as Xirgo contends; the allegations pertain directly to the inventiveness of the concepts claimed by the patents under *Alice* step two. And, as discussed below, Fleet Connect's allegations are not merely "conclusions" or a "formulaic recitation of the elements" of 35 U.S.C. § 101. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**2. '837 patent**

Fleet Connect makes the following factual allegation that the '837 patent captures an inventive concept not conventional in the art at the time of the invention:

> The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, *the claimed inventions include inventive components* that improve upon the function and operation of voice and data communications systems. The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the *non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic* in the art at the time of the invention.

Am. Compl. ¶¶ 73-74 (emphasis added).

Within the written description of the '837 patent, as referenced above within the amended complaint, the patent describes that at the time of the invention, "the need exist[ed] for an automated method" to more accurately estimate a time-of-arrival to a person in transit to a destination. '837 patent, col. 1 l. 56-57. The "present invention enables a user to automatically receive trip status information while in transit to a destination location . . . . A novel feature of the present invention is its use of the calendrical time (i.e., the time and date) for estimating time-of-arrival metrics." *Id.*, col. 1 l. 61-63, col. 2 l. 4-6. Fleet Connect alleges that its patent requires the specific statistical methodology of "estimating time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on . . . at least one historical travel time statistic." '837 patent, cl. 1.

Within the amended complaint and Dr. Goldberg's declaration, there are no other specific allegations regarding whether the '837 patent claims an inventive concept. Yet the standard for a motion to dismiss requires the Court to "assume each well-pled

factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant." *Chang v. United States*, 859 F.2d 893, 894 (Fed. Cir. 1988). Fleet Connect's allegation that the '837 patent includes "inventive components that improve upon the function and operation of voice and data communications systems" and the '837 patent written description stating that the use of calendrical time to calculate time-of-arrival bounds was novel at the time of the invention gives rise to a factual dispute over whether the '837 patent is patent eligible as a technological solution. Am. Compl. ¶ 73; '837 patent, col. 2 l. 4-6. Fleet Connect's statements regarding the claims of the '837 patent plausibly allege that providing up-to-date time-of-arrival metrics for a confidence interval to users while in transit was not well-understood, routine, and conventional to a skilled artisan, keeping in mind that a claim construction hearing will provide "a full understanding of the basic character of the claimed subject matter." *Bancorp*, 687 F.3d at 1273-74. Accordingly, the Court denies Xirgo's motion to dismiss the '837 patent on patent eligibility grounds.

**3. '223 patent**

Fleet Connect makes the following factual allegation that the '223 patent captures an inventive concept that was not previously known in the art:

> A POSITA would understand that the claims of the '223 patent are directed to *subject matter that was unknown in the art at the time* . . . . To the extent that the claims employ components and technology that existed at the time (for instance, memory on board the vehicle, output unit, mobile communication device, communication interface, and external transmitting units) they are *employed together here in a way that was new and would not have been considered conventional, routine, or generic to those skilled in the art* . . . . The use of the in-vehicle navigation systems, such as those claimed in the independent claims, including claim 19, to first determine a route based on "static information," then modifying it based on "additional information" and "real travel parameters" to improve then-existing vehicle navigation systems, was an unconventional use of existing

> technology that *was not previously known in the art*.

Am. Compl. ¶ 63 (emphasis added).

Fleet Connect also alleges that even if the '223 patent uses conventional components, it packages those components in a new way:

> [T]he ordered combination of the elements in claims 1, 15, and 19 (especially coupled with their dependent claims) of the '223 patent, as recited and described in detail above*, were not known in the art*. Goldberg Decl., ¶ 58. A POSITA would not have been aware of any art or system that existed prior to the priority date of the '223 patent that taught the use of in-vehicle navigation systems to self-diagnose, self-correct, and dynamically integrate additional information in order to maintain the optimal route, as claimed in the various forms in the claims highlighted above.

Am. Compl. ¶ 64 (emphasis added).

Fleet Connect supports the factual allegations in its amended complaint with Dr. Goldberg's declaration, which also alleges that claim 19 of the '223 patent provides technical solutions to problems in vehicle navigation systems as of the early 2000s:

> [C]laim 19 of the '223 patent provides at least three technical solutions to the "static data" and "unverified prediction" problems that plagued conventional vehicle navigation systems in the early 2000s. At that time, navigation units were largely reactive; they either followed a pre-calculated path or changed it only when they received a broadcasted traffic alert (like Radio Data System (RDS)- Traffic Message Channel (TMC).

Goldberg Decl. ¶ 42.

Dr. Goldberg first describes that the '223 patent eliminates the "reality gap problem" by "determining if a route remains optimal based on a 'comparison of real travel parameters . . . with travel parameters associated with the optimal route' and constantly check[ing] if the vehicle's 'travel time and traveled distance' match the expected schedule. *Id.* ¶ 43. Dr. Goldberg next describes that the '223 patent solved

existing problems related to "stale data" by determining a new optimal route when the optimal route does not remain optimal" through an automated trigger. *Id.* ¶ 44. Finally, Dr. Goldberg explains that the '223 patent solved existing problems related to the integration of "static" versus "additional" information by the method acting on "static information" to find the initial route and also requiring the reception of additional information to determine the new optimal route. *Id.* ¶ 45.

Xirgo contends that Dr. Goldberg's opinions in his declaration are "conclusory" and rest on "no factual basis." Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 8, 13. But Dr. Goldberg provides an expert opinion on the state of the art at the time of the inventions, the technical problems that existed in the art at the time of the inventions, and how the '223 patent provided technical solutions to these problems. Like the prior sets of patents, Fleet Connect has alleged sufficient facts tending to show that the use of additional information to update and modify a route based on static information claimed in the '223 patent was not previously known. This is sufficient to survive *Alice* step two at this stage of the case. *Aatrix*, 882 F.3d at 1128. Accordingly, the Court denies Xirgo's motion to dismiss the claims arising from Barbosa patents, the '837 patent, and the '223 patent based on lack of patent eligibility.

**B. Patent infringement**

Xirgo also moves for dismissal on the ground that Fleet Connect has failed to sufficiently plead a plausible claim for patent infringement. A complaint must plead sufficient factual content to give the accused infringer fair notice of what activity is being accused of infringement and to allow the court to draw a reasonable inference that the defendant is liable. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir.

2021); *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1258-60 (Fed. Cir. 2018) (concluding the plaintiff sufficiently pled an infringement claim by specifically identifying three accused products, attaching photos of the accused products to the complaint, and alleging generally that the accused products met "each and every element of at least one claim of the [ ] patent either literally or equivalently."). This requirement "ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). The Federal Circuit has made clear that "a plaintiff is not required to plead infringement on an element-by-element basis." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 42 (Fed. Cir. 2024). But there must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim. *Bot M8*, 4 F.4th at 1353. When a plaintiff alleges infringement of a single claim but the patent includes additional claims, if the remaining claims are "substantially similar and linked to the same abstract idea" of the allegedly infringed claim, the court may analyze the "representative" claim in a § 101 and infringement analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quotations omitted).

The Court finds that the amended complaint alleges sufficient factual matter to state a plausible claim of infringement regarding each of the allegedly infringed patents.

**1. Barbosa patents**

In its amended complaint, Fleet Connect identifies specific accused products that are sold and offered by Xirgo and attaches detailed claim charts mapping accused product functionalities to claim limitations of the Barbosa patents. In this regard, this

case is similar to *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1333 (Fed. Cir. 2012), in which the Federal Circuit reversed a district court's dismissal of patent infringement claims where the plaintiff's detailed amended complaints drew extensively from defendants' advertising materials, websites and industry publications to support infringement allegations for each accused product. The Federal Circuit found that such detailed factual allegations were sufficient to survive a Rule 12(b)(6) motion to dismiss. *Id.* at 1346. In addition, the Federal Circuit rejected the defendant's argument that the complaints were deficient because they did not describe "precisely how each element of the asserted claims are practiced by their customers," characterizing that argument as "premised on a pleading standard that is too stringent." *Id.* at 1335.

In this case, the factual allegations as set forth in the complaint and in the accompanying claim charts, when taken as true, are sufficient to find that Fleet Connect has satisfied the pleading requirements at the motion to dismiss stage for each of the three Barbosa patents. Fleet Connect, like the plaintiff in *In re Bill of Lading Transmission & Processing System Patent Litigation*, extensively uses advertising materials and websites to support its infringement allegations for each patent in its amended complaint. First, Fleet Connect in count 4 asserts that Xirgo directly infringed at least claim 1 of the '044 patent. Am. Compl. ¶¶ 109-10. Claim 1 of the '044 patent describes:

> [a] method comprising[] accessing, at a beginning of a work shift using a handheld device, at least one template stored on a server located remotely from the handheld device, the at least one template listing tasks that are assigned to be completed before an end of the work shift . . . .

Am. Compl., Ex. D at 1.

Fleet Connect alleges that Xirgo infringed at least claim 1 of the '044 patent by "making, using, selling, ordering to sell, importing, and/or internal and external testing of the Accused Products."[3] Am. Compl. ¶¶ 109-10. Fleet Connect provides the example that the Accused Products "allow fleet managers to guide users and/or drivers through their day by creating and sending tasks (routes, start or stop) to them." Am. Compl., Ex. D at 1. The claim chart in Exhibit D provides screenshots of websites describing and marketing materials for the Accused Products, reciting each claim limitation and highlighting portions of the websites and marketing materials that support an inference that the Accused Product practices each claim limitation. Xirgo's argument that the screenshots within the claim charts are from third party websites is immaterial. Xirgo is alleged to sell or offer to sell these products in the United States, which is itself an act of infringement. 35 U.S.C. § 271(a). It does not matter that the materials used to show

---

[3] The term "Accused Products" for the Barbosa patents refers to Xirgo's Fleet Management Platform and Tracking Solutions, including but not limited to:

(1) all in-cab tablets, smartphones, laptops, computers, and/or devices provided by Xirgo to drivers and all Electronic Logging Device Systems ("ELDs") that those devices are in communication with, as the term ELDs is used by the USDOT, FMCSA, and/or mandated as part of MAP-21 that commercial motor vehicle operators must use (see https://eld.fmcsa.dot.gov/) including, but not limited to, the In Vehicle Display Tablets and Xirgo Driver app (such as Xirgo Global Logistics app), Xirgo Fleet Management application/software/website, Xirgo Global Logistics application/software/website, and any other similar devices applications, and/or instrumentalities;
(2) any relevant Fleet Management Software/Application/Website/Platform/Portal that provides, processes, and/or displays routing, location, tracking, status information, vehicle alerts or information, task assignment and management, and driver alerts or information from or to any of the devices described in (1) above;
(3) other substantially similar products and services offered in the past or the future, and
(4) all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

Am. Compl., Ex. D at 1.

that a product practices a claim limitation is from a third-party website if Xirgo in fact sells or offers to sell those products.

Second, Fleet Connect asserts in count 5 that Xirgo directly infringed at least claim 1 of the '565 patent. Am. Compl. ¶¶ 132-33. Claim 1 of the '565 patent describes "[a] method comprising[] accessing a template stored on a server located remotely from a handheld device, the template listing tasks to be completed before the end of a work shift . . . ." Am. Compl., Ex. E at 1. Fleet Connect alleges that Xirgo infringed claim 1 of the '565 patent by "making, using, selling, ordering to sell, importing, and/or internal and external testing of the Accused Products." Am. Compl. ¶ 132. Further, Fleet Connect alleges that Xirgo "using (including testing) the Accused Products" identified in the patent, "perform[ed] the method of claim 1." Am. Compl., Ex. E at 1. Fleet Connect provides the same example from the '044 patent, namely, that the Accused Products "allow fleet managers to guide users and/or drivers through their day by creating and sending tasks (routes, start or stop) to them." *Id.* Similar to the '044 patent, the claim chart in Exhibit E shows screenshots of websites and marketing materials for the Accused Products, reciting each claim limitation for the '565 patent and highlighting portions of the websites and marketing materials that support an inference that the Accused Product practices each claim limitation of the '565 patent.

Third, Fleet Connect asserts in count 6 that Xirgo directly infringed at least claim 1 of the '949 patent. Am. Compl. ¶¶ 155-56. Claim 1 of the '949 patent describes "[a] method, comprising[] accessing a template stored on a server located remotely from a handheld device, the template listing a first set of tasks to be completed in a first predetermined time period . . . ." Am. Compl., Ex. F at 1. Fleet Connect alleges that

Xirgo infringed claim 1 of the '949 patent by "making, using, selling, ordering to sell, importing, and/or internal and external testing of the Accused Products." Am. Compl. ¶ 155. Fleet Connect also alleges that Xirgo, by "using (including testing) the Accused Products" identified in the patent, "perform[ed] the method of claim 1." Am. Compl., Ex. F at 1. Fleet Connect once again provides the example that the Accused Products "allow fleet managers to guide users and/or drivers through their day by creating and sending tasks (routes, start or stop) to them." *Id.* Like the previous patents, Fleet Connect provides a detailed claim chart showing screenshots of the Accused Products and parts of the websites and marketing materials for these products that support the inference that the Accused Products infringe each claim limitation of the '949 patent.

Xirgo's argument that Fleet Connect fails to allege how each element of the asserted claims of any of the patents are practiced by each accused product is unavailing. Fleet Connect's detailed amended complaint draws extensively from advertising materials and websites to support each claim limitation's infringement allegations for the Accused Products. "[T]here is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d at 1343. Requiring element-by-element proof at the pleading stage "would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage," which neither *Twombly* nor *Iqbal* demands. *Id.* at 1342. Given the detailed nature of Fleet Connect's allegations in its amended complaint and claim charts, Xirgo has proper notice of the alleged infringement of the Barbosa patents as

required under *Phonometrics*.

**2. '837 patent**

In count 3, Fleet Connect asserts that Xirgo directly infringed at least claim 1 of the '837 patent. Claim 1 of the '837 patent describes:

> [a] method comprising (i) receiving a location of a mobile communications device that is in transit to a destination; (ii) estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on: (a) said location and (b) at least one historical travel time statistic; and (iii) sending the time-of-arrival bounds to said mobile communications device.

Am. Compl., Ex. G at 1.

Fleet Connect alleges that Xirgo infringed claim 1 of the '837 patent by "making, using, selling, ordering to sell, importing, and/or internal and external testing of the Accused Products."[4] Am. Compl. ¶ 75. Fleet Connect specifically alleges that "Xirgo

---

[4] The "Accused Products" for the '837 patent refer to Xirgo's Fleet Management Platform and Tracking Solutions, including but not limited to:

(1) all in-cab tablets, smartphones, laptops, computers, and/or devices provided by Xirgo to drivers and all Electronic Logging Device Systems ("ELDs") that those devices are in communication with, as the term ELDs is used by the USDOT, FMCSA, and/or mandated as part of MAP-21 that commercial motor vehicle operators must use (see https://eld.fmcsa.dot.gov/) including, but not limited to, the Xirgo Telematic Devices (e.g., XT3100, XG3700, XT2400, XT2500, XT53, XT2100, XT4500, XT4700 and XT4900, FMS500 StCAN, FMS500 ONE, XT2600, Xirgo OTAC Tracker, XT1500, XT4392, XT6383, XT6384, and XT4964) and In-Vehicle Display Tablets (ELD Tablets), Xirgo Fleet Management (such as Xirgo Fleet Management application/software/website, Xirgo Asset Telematics (Asset Monitoring & Control), Xirgo Global Logistics application/software/website, Xirgo Driver app (such as Xirgo Global Logistics app) and any other similar devices applications, and/or instrumentalities;

(2) all Asset Tracking Devices, including, but not limited to, XT3100, XG3700, XT2400, XT2500, XT53, XT2100, XT4500, XT4700 and XT4900, FMS500 StCAN, FMS500 ONE, XT2600, Xirgo OTAC Tracker, XT1500, XT4392, XT6383, XT6384, and XT4964, or any product, service, device, or instrumentality that supports tracking, routing, monitoring, maintenance, messaging, workflow, and compliance for vehicles, cabs, trailers, containers, and equipment and that

Fleet Management (e.g., Xirgo Fleet Management application/software/website, Xirgo Global Logistics application/software/website, Xirgo Asset Telematics (Asset Monitoring & Control) and/or similar Accused Products) perform the method of claim 1." Am. Compl., Ex. C at 2. Fleet Connect provides a detailed claim chart showing screenshots of the Accused Products and parts of the websites and marketing materials for these products that support the inference that the Accused Products infringe each claim limitation of the '837 patent. These factual allegations are sufficient to meet the requirements for pleading infringement.

**3. '223 patent**

In count 2, Fleet Connect asserts that Xirgo directly infringed at least claim 19 of the '223 patent. Am. Compl. ¶¶ 66-67. Claim 19 of the '223 patent describes "[a] method for destination routing of a vehicle . . . ." Am. Compl., Ex. B at 1. Fleet Connect alleges that Xirgo infringed claim 19 of the '223 patent by "making, using, selling, ordering to sell, importing, and/or internal and external testing of the Accused Products."[5] Am. Compl. ¶ 66. Specifically, Fleet Connect provides the example that

---

communicates using Bluetooth, 802.11, GNSS/GPS, GSM, and/or LTE, and their various subsections and functionally similar protocols or standards;

(3) any relevant Fleet Management Software/Application/Website/Platform/Portal that provides, processes, and/or displays routing, location, tracking, status information, vehicle alerts or information, or driver alerts or information from or to any of the devices described in (1)-(2) above;

(4) other substantially similar products and services offered in the past or the future, and

(5) all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

Am. Compl., Ex. C at 1.

[5] The "Accused Products" for the '223 patent refer to Xirgo's Fleet Management Platform and Tracking Solutions, including but not limited to:

"Xirgo Fleet Management (e.g. Xirgo Fleet Management application/software/website, Xirgo Global Logistics application/software/website, Xirgo Asset Monitoring & Control, and/or other similar Accused Products) implement the steps for destination routing for their trucks/vehicles/trailers/assets. Am. Compl., Ex. B at 1. Fleet Connect provides yet another detailed claim chart showing screenshots of the Accused Products and parts of the websites and marketing materials for these products that support the inference that

---

(1) all in-cab tablets, smartphones, laptops, computers, and/or devices provided by Xirgo to drivers and all Electronic Logging Device Systems ("ELDs") that those devices are in communication with, as the term ELDs is used by the USDOT, FMCSA, and/or mandated as part of MAP-21 that commercial motor vehicle operators must use (see https://eld.fmcsa.dot.gov/) including, but not limited to, the In-Vehicle Display Tablets and Xirgo Vehicle Telematics devices such as XT2600, FMS500 STCAN, Xirgo Global FMS500 ONE, XG3700 Series, Xirgo OTAC Tracker, XT1500 Series, XT2100 Series, XT2500 Series, XT3100 Series, XT2400 Series, XT4500 Series, XT4700 Series, XT4392, XT6383, XT6384, XT4964, XT4900, Xirgo Fleet Management application/software/website, Xirgo Global Logistics application/software/website, Xirgo Asset Telematics (Xirgo Asset Monitoring & Control), Xirgo Cargo Monitoring, Xirgo Driver App (e.g., Xirgo Global Logistics), and any other similar devices applications, and/or instrumentalities;

(2) all Asset Tracking Devices, including, but not limited to, XT2600, FMS500 STCAN, Xirgo Global FMS500 ONE, XG3700 Series, Xirgo OTAC Tracker, XT1500 Series, XT2100 Series, XT2500 Series, XT3100 Series, XT2400 Series, XT4500 Series, XT4700 Series, XT4392, XT6383, XT6384, XT4964, XT4900, or any product, service, device, or instrumentality that supports tracking, routing, monitoring, messaging, workflow, and compliance for vehicles, cabs, trailers, containers, and equipment and that communicates using Bluetooth, 802.11, GNSS/GPS, GSM, and/or LTE and their various subsections and functionally similar protocols or standards;

(3) any relevant Fleet Management Software/Application/Website/Platform/Portal that provides, processes, and/or displays routing, location, tracking, status information, vehicle alerts or information, or driver alerts or information from or to any of the devices described in (1)-(2) above;

(4) other substantially similar products and services offered in the past or the future, and

(5) all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

Am. Compl. Ex. B at 1.

the Accused Products infringe each claim limitation of claim 19 of the '223 patent. As before, Fleet Connect alleges enough factual allegations to put Xirgo on proper notice of the alleged infringement as required under *Phonometrics*.

**4. '583 patent**

In count 7, Fleet Connect asserts that Xirgo directly infringed at least claim 1 of the '583 patent. Am. Compl. ¶¶ 164-65. Claim 1 of the '583 patent describes "[a] method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver . . . ." Am. Compl., Ex. G at 1. Fleet Connect alleges that Xirgo infringed claim 1 of the '583 patent by "making, using, selling, ordering to sell, importing, and/or internal and external testing of the Accused Products." [6] Am. Compl. ¶ 155.

---

[6] The "Accused Products" for the '583 patent refer to Xirgo's Fleet Management Platform and Tracking Solutions, including but not limited to:

(1) all in-cab tablets, smartphones, laptops, computers, and/or devices provided by Xirgo to drivers and all Electronic Logging Device Systems ("ELDs") that those devices are in communication with, as the term ELDs is used by the USDOT, FMCSA, and/or mandated as part of MAP-21 that commercial motor vehicle operators must use (see https://eld.fmcsa.dot.gov/) including, but not limited to, In-Vehicle Display Tablets (ELD Tablets), Xirgo Telematics Devices (e.g., XT6300, XT2500, XT6264, XG3700, XT2400, XT2100, XT2180, XT5273A, FMS500 Light, FMS500 Light+, FMS500 STCAN, FMS500 TACHO, XT4964, Xirgocam XT-BB-22, XG3780 SDK 4G (e.g., XG3780U00C1, XG3780U00C2, XG3780U00C3, XG3780U00C4, and XG3780U00C5), XT4500, XT4900, XT4700, XT3100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, and XG3700 TACHO SDK), Xirgo Fleet Management application/software/website, Xirgo Global Logistics application/software/website, Xirgo Asset Telematics (Xirgo Asset Monitoring & Control), Xirgo Driver app (e.g., Xirgo Global Logistics app), and any other similar devices applications, and/or instrumentalities;

(2) all Asset Tracking Devices including, but not limited to, the XT6300, XT2500, XT6264, XG3700, XT2400, XT2100, XT2180, XT5273A, FMS500 Light, FMS500 Light+, FMS500 STCAN, FMS500 TACHO, XT4964, Xirgocam XT-BB-22, XG3780 SDK 4G (e.g., XG3780U00C1, XG3780U00C2, XG3780U00C3, XG3780U00C4, and XG3780U00C5), XT4500, XT4900, XT4700, XT3100, XG3700 XTCAN SDK, XG3700 LIGHT SDK, XG3700 LIGHT+ SDK, XG3700 STCAN SDK, and XG3700 TACHO SDK, or any product, service, device, or

Fleet Connect specifically alleges that Xirgo "using (including testing) the Accused Products "identified in the patent, "perform[ed] the method of claim 1" by practicing LTE communications, which embodies the claimed OFDM receiver functionality. Am. Compl., Ex. F at 1. Fleet Connect further alleges that Xirgo "perform[s] wireless communication according to techniques for modern OFDM-based receivers when utilizing the ETSI 3GPP TS 136.101, et seq. protocol when using the Accused Products." *Id.* Fleet Connect provides another detailed claim chart showing screenshots of the Accused Products and parts of the websites and marketing materials for these products that support the inference that the Accused Products infringe each claim limitation of claim 1 of the '583 patent. Fleet Connect has met the pleading standard for a claim of infringement for the '583 patent and for each other patent that was allegedly infringed.

**Conclusion**

For the foregoing reasons, the Court denies defendants' motion to dismiss [dkt. 26]. Defendants are directed to answer the amended complaint within twenty-one days

---

instrumentality that supports tracking, routing, monitoring, maintenance, messaging, workflow, and compliance for vehicles, cabs, trailers, containers, and equipment and that communicates using GNSS/GPS, and/or 4G/LTE and their various subsections and functionally similar protocols or standards;

(3) any relevant Fleet Management Software/Application/Website/Platform/Portal that provides, processes, and/or displays routing, location, tracking, status information, vehicle alerts or information, or driver alerts or information from or to any of the devices described in (1)-(2) above;

(4) other substantially similar products and services offered in the past or the future, and

(5) all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

Am. Compl. Ex. F. at 1.

of this order.

MATTHEW F. KENNELLY
United States District Judge

Date: October 26, 2026